## MOSS & COMPANY *v.* STOKELEY.

1. A cotton factor, unless he has expressly or impliedly engaged to pay the drafts of a customer, is not liable in·damages to the latter for refusing to pay his draft, even though the customer had in the factor's hands funds sufficient to meet the same at the time it was presented; but the contrary is true when, by express agreement or by necessary implication arising from the course of dealings between the parties, there is an undertaking or contract on the factor's part to pay such drafts.
2. While the declaration in the present case did not, in terms, allege any express agreement, on the part of the defendants to pay the plaintiff's draft, yet, as it did allege facts·from which such an agreement could be reasonably implied, the defect in the declaration was curable by amendment, and it was too late, after verdict, to take advantage of the same by motion in arrest of judgment, the declaration in other respects setting forth a cause of action.

March 25, 1895.  Brought forward from the last term.  Code, §4271(a–c).

Action for damages.   Before Judge COBB.   City court of Clarke county.   January term; 1894.

WILLIAM S. BASINGER, for plaintiffs in error.

THOMAS & STRICKLAND, *contra.*

LUMPKIN, Justice.

This was an action by' Stokeley against Moss & Company, for damages alleged to have been occasioned by

the refusal of the defendants to pay a draft drawn upon them by the plaintiff. The material portions of the declaration were as follows : Moss & Company were cotton factors and warehousemen, having carried on business as such for a number of years. The plaintiff, as a merchant, had shipped a large quantity of cotton to the defendants, with instructions to sell the same and place the proceeds to his credit. During the fall of 1892, and prior to October 22d, he had drawn various drafts upon them, which were all promptly paid on presentation. On the day last mentioned, having then to his credit with the defendants more than $450.00, he drew upon them a draft for $403.88, payable to the order of Pope & Fleming, which was placed in bank for collection and duly presented to the defendants for payment, when they refused to pay the same, stating, in effect, that the plaintiff had no funds with them for that purpose. The declaration further alleged that this refusal " was wanton and malicious, and done for the purpose of injuring and damaging " the plaintiff, and that it did in fact damage him in the sum of ten thousand dollars.

There was a verdict in favor of the plaintiff for one hundred dollars. It does not appear that the defendants objected to any ruling made during the trial, nor did they file a motion for a new trial, but during the term they moved in arrest of judgment on the ground that the declaration set forth no cause of action and authorized no judgment whatever in favor of the plaintiff.

1. If the declaration will support a recovery for any amount, the motion in arrest of judgment was not well taken; for it is to be presumed the evidence was sufficient to authorize a finding in the plaintiff's favor for the amount awarded him by the jury. The law bearing upon the controlling question involved in this case is thus aptly stated in Chitty on Bills, p. *281: " The drawee of a bill, unless he has for adequate consideration

expressly or impliedly engaged to accept it, is not, although he be indebted to the drawer in the full amount, or although adequate funds have been remitted to him for the express purpose, legally bound to accept, nor is he liable to any action for the consequences of his refusal; though, according to mercantile usage, such refusal would be deemed very improper. In this respect the situation of an ordinary debtor or agent differs from that of a banker, who is liable to an action if he should refuse, having sufficient money in hand, to honor the check of his customer; and, in case of refusal, the *holder* (though the drawer may withdraw the funds, or sue the drawee for the debt) has not *in this country* any remedy at law against the drawee or the funds in his hands. However, in commercial transactions, frequently from prior intercourse and dealings between the parties, an engagement to accept may be inferred; and it should seem, that when funds have been remitted to a drawee for the express purpose of providing for a bill drawn upon him, and he receives and retains the same without objection or returning the amount, an engagement to accept may be implied. If the drawee has expressly or impliedly promised the intended drawer to accept the bill to be drawn on him for a valuable consideration, and afterwards should refuse to perform such contract, then the drawer (but not any other party) may certainly sue him, and recover re-exchange and other damages occasioned by the dishonor of the bill; and where the drawee has money in hand, very slight evidence, as previous commercial transactions, will support the presumption of a contract to accept; and a promise to give notice to a party when he might draw a bill, amounts to an undertaking to accept the bill when drawn in pursuance thereof." Of course, what is there said with reference to the acceptance of bills maturing in the future is likewise applicable to the payment of sight drafts. We

consider this citation of authority sufficient to establish liability on the part of Moss & Company to Stokeley for their refusal to pay his draft, if, in connection with the facts alleged in the above condensed statement of the declaration, it was also true they had expressly agreed to pay his drafts, or an undertaking on their part to do so arose by necessary implication from the course of their dealings with him.

2. The declaration does not, in terms, allege any express agreement to this effect; but we think there can be no doubt it does allege facts from which such an undertaking could be reasonably implied. The allegations of the declaration, fairly construed, amount to saying this much; and the failure to say so distinctly and explicitly is certainly, under the doctrine of the *Ellison* case, 87 *Ga.* 691, a defect which would have been curable by amendment, and one which, we think, is aided by verdict. This being so, the judgment cannot be arrested or set aside. Code, §3590; *Dill et al.* v. *Jones,* 3 *Ga.* 79; *Stanford et al.* v. *Bradford et al.,* 45 *Ga.* 97. These two cases are but instances of the scores that might be cited to the same effect. See, also, 12 Am. & Eng. Enc. of Law, p. 147(d) and notes.        *Judgment affirmed.*